■ In the Matter of the Claim of JOSEPH F. PUTNAM, Respondent, v. HARRISON RADIATOR DIVISION, GENERAL MOTORS CORPORATION, Respondent, and CURTISS & EDWARDS et al., Appellants. WORKMEN'S COMPENSATION BOARD, Respondent.— Appeal by one of two employers and its insurance carrier from a decision and award of the Workmen's Compensation Board whereby appellant employer was held solely liable for claimant's disability due to rupture of an intervertebral disc. Appellants concede liability for one half of the award. Claimant worked for respondent employer for many years and until October, 1955, in which month he went to work for appellant employer. It is not dis-

puted that in November, 1956 he sustained an industrial accident while lifting an automatic washing machine, feeling his back "snap" as injury occurred. This injury, alone or jointly with either an accidental injury sustained in the prior employment or with a then existing back condition of nonindustrial origin, caused disability and required surgical removal of the affected disc. These three theories of causation present the problem before us. Claimant's attending physician at various times reported, and upon the hearing testified to, a history given by claimant of hurting his back while lifting during the prior employment (it appearing on the hearing that the date was in 1954), and of two or three attacks thereafter (apparently during the same employment) "brought on by lifting on the job". Claimant's surgeon in a report which he verified in his testimony said that he obtained from claimant a history of the first back incident in the prior employment as a spontaneous onset of pain and, about once a year thereafter the experience of a snap and pain in the lower back, "associated with lifting maneuvers" in the prior employment, followed in several days by pain in the left sciatic distribution. In the course of a colloquy at a hearing prior to that at which he was sworn, claimant denied giving his physician the history which the latter reported, adding that the doctor "must have mis-heard". He did not comment upon or testify in regard to the history recorded by his surgeon. Claimant testified that he did not recall the "cause" or circumstances of the first or 1954 back incident but that he received heat therapy and was X-rayed under the direction of the plant physician. The latter testified from his notes, reading: "This onset of trouble is not related to his work by his admission and objectively is non-occupational". Claimant said that his pain continued for about four months or longer, during which period he received chiropractic treatment "many times". He testified that this "one episode of back pain" was the only one which occurred during the prior employment. Claimant's attending physician reported his opinion that the herniated disc "was the result of lifting maneuvers" in each employment and testified, after admitting various possibilities: "My personal feeling is that something did exist prior to November 1956, and that that something was aggravated by the injury which produced a snapping or popping in the back". Claimant's surgeon testified to an opinion that claimant had degenerative disc disease prior to the 1954 episode; that the incidents of lifting accelerated the symptoms and precipitated them from time to time, later emphasizing that "they precipitated his symptoms, not the disc condition"; that his disability is related to all the incidents; that if "there was no other known accident outside of the accident of November 2nd, 1956 * * * that was a competent aggravating factor in the herniated lumbar disc". Upon this evidence it was determined: "The Board finds that claimant's present disability is due to the November, 1956 accident * * * as we conclude that the back condition prior to November, 1956 was of non-occupational origin." (Emphasis supplied.) The decision states a non sequitur. The finding is, in effect, that no accident occurred in the prior employment and such a finding was warranted, upon acceptance of claimant's testimony and that of the plant physician. While, therefore, respondent employer was by that finding properly relieved of liability, it does not necessarily follow that appellants are liable for the entire award, absent some additional fact. If the November, 1956 accident and the pre-existing condition were concurrent causes of the disability and each contributed to the necessity for the operation and the other medical expenses, appellant carrier's liability would be reduced in the proportion that causation should properly be assigned to the pre-existing condition (*Matter of Engle* v. *Niagara Mohawk Power Corp.*, 6 N Y 2d 449); but if the prior condition was not such a cause and the effect of the industrial accident was merely to aggravate the underlying condition then under

" the settled rule of the cases * * * the employer is liable for the full consequences" (*Matter of Engle* v. *Niagara Mohawk Power Corp., supra,* pp. 452–453). It seems not impossible that support for a finding of concurrent causation could be found in the medical evidence but, on the other hand, the doctors from whom this medical evidence was adduced also testified quite forcefully to aggravation. The board should, of course, have determined these issues and have thereupon included in its decision " a statement of the *facts* which formed the basis of its action ". (Workmen's Compensation Law, § 23.) Remittal is therefore necessary. The procedural objection raised in the Attorney-General's brief does not impress us as substantial as it is perfectly clear that the basic issue presented by appellants on their application to the board, and the only one that concerned them, was that of their liability for but one half of the award. Decision and award reversed, with one bill of costs to appellants employer and carrier and respondent employer against the Workmen's Compensation Board and case remitted to the Workmen's Compensation Board for further proceedings not inconsistent herewith.